IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANA SPENCER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 12-1034 |
| v. ) | |
| ) | Magistrate Judge Cynthia Reed Eddy |
| CAROLYN COLVIN, ) | |
| Commissioner of Social Security, ) | Electronic Filing |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

May 16th, 2013

I. **INTRODUCTION**

Diana Spencer ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 – 433 ("Act"). This matter comes before the court on cross motions for summary judgment. (ECF Nos. 10, 13). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be DENIED, and Defendant's Motion for Summary Judgment will be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB with the Social Security Administration on January 8, 2009, claiming an inability to work as of May 8, 2008. (R. at 111 – 12)[1]. Plaintiff initially alleged disability as a result of pain and limitation stemming from impaired vision, kidney disease, headaches, and anxiety. (R. at 141). Plaintiff was initially denied benefits on June 10, 2009. (R. at 63 – 67). A hearing was scheduled for July 14, 2010, and Plaintiff appeared to testify, represented by counsel. (R. at 28 – 49). A vocational expert also testified. (R. at 28 – 49). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on September 24, 2010. (R. at 8 – 22). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on May 24, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 4).

Plaintiff filed her Complaint in this court on July 27, 2012. (ECF No. 3). Defendant filed an Answer on October 19, 2012. (ECF No. 7). Cross motions for summary judgment followed. (ECF Nos. 10, 13).

## III. STATEMENT OF THE CASE

Plaintiff was born on April 15, 1954, was fifty four years of age at the time of her application for DIB, and was fifty six years of age at the time of her administrative hearing. (R. at 31). Plaintiff was married and lived in a home with her husband and two teenage children. (R. at 41, 158). Plaintiff completed the twelfth grade and earned certification as a nurse's aide from a vocational program. (R. at 31 – 33, 146).

At the time of her initial application, Plaintiff stated that she ceased working in December 2006, because she "was preparing for a hysterectomy and basically, just got tired of working."

---

[1]   Citations to ECF. Nos. 8 – 8-15, the Record, *hereinafter*, "R. at ___."

(R. at 141). She did not believe that she was disabled as the result of her claimed impairments until May 8, 2008. (R. at 141). Her prior employment consisted of work as an "escort person" in a hospital between 1980 and 1991, and as a "teacher's aide/caretaker" between 2003 and 2006. (R. at 142).

In a self-report of daily functioning, Plaintiff indicated that she suffered a stroke due to preeclampsia during one of her pregnancies. (R. at 149 – 58). The lasting effects of Plaintiff's stroke included vision loss and headaches. (R. at 149 – 58). Plaintiff also experienced stomach pains that she attributed to problems with her kidneys. (R. at 149 – 58). Her pain was exacerbated by physical activity and stress. (R. at 149 – 58). Plaintiff's days consisted of preparing light meals, doing light laundry and light housework, talking to friends on the telephone, occasionally visiting with family, feeding and walking her dogs, reading, completing puzzles, and watching television. (R. at 149 – 58). Plaintiff would shop for food and clothing when accompanied by her husband. (R. at 149 – 58). She was capable of driving short distances alone. (R. at 149 – 58). Plaintiff had no issues with self-care. (R. at 149 – 58). She got along well with others, attended church every other week, and sporadically attended sporting events. (R. at 149 – 58).

Plaintiff was examined by her primary care physician Kristin Zvonar, M.D. on April 15, 2008. (R. at 321). At that time, Dr. Zvonar noted that Plaintiff was receiving care from nephrologists, that she was tolerating her kidney therapy well, and that she was not experiencing adverse medication side-effects. (R. at 321). Plaintiff did not have upset stomach, and did not feel anxious or nervous. (R. at 321). Plaintiff's mood was considered to be well controlled. (R. at 321).

While Plaintiff's kidneys and hypertension had been problematic in the past, by April 2008, Plaintiff's nephrotic syndrome was considered to be improved, as was her proteinuria. (R. at 258 – 65). Also, Plaintiff's chronic kidney disease was considered to be stable, as was her hypertension. (R. at 258 – 59). The condition of Plaintiff's kidneys and hypertension continued to improve, such that as of September 15, 2008, Plaintiff's treating physicians at Teredesai, McCann & Associates ("TAM") considered her nephrotic syndrome and hypertension to be controlled. (R. at 252 – 57). Plaintiff's chronic kidney disease was considered to be stable, and her proteinuria had improved. (R. at 252). Plaintiff's insight and judgment were considered to be good, throughout. (R. at 252 – 65).

Plaintiff continued with the nephrologists at TAM through February 2010. (R. at 326 – 338, 390 – 412). At that time, it was noted that Plaintiff "feels well" with her treatment regimen for chronic kidney disease, and that she had "no complaints". (R. at 390 – 92). Although Plaintiff's hypertension was slightly elevated, her renal function was stable, and her proteinuria was under control. (R. at 391). Plaintiff's affect was also noted to be normal, and she was without apparent anxiety, depression, or agitation. (R. at 390). She denied any inability to concentrate. (R. at 392). These findings were largely in-line with prior treatment notes from TAM and Dr. Zvonar. (R. at 326 – 338, 390 – 412, 439 – 45).

On April 13, 2009, Plaintiff was examined by Tod R. Marion, Ph.D. on behalf of the Bureau of Disability Determination. (R. at 353 – 57). Dr. Marion noted that Plaintiff drove herself to her hearing, and was neatly and casually dressed. (R. at 353 – 57). Plaintiff shared information easily and made good eye contact throughout the interview and examination. (R. at 353 – 57). Plaintiff did show difficulty providing an organized, detailed history. (R. at 353 – 57). Plaintiff claimed to have depression and crying episodes. (R. at 353 – 57). Plaintiff's

primary care physician had prescribed some medication for these issues. (R. at 353 – 57). Plaintiff received no other mental health treatment, however. (R. at 353 – 57). Plaintiff also stated that she was not good at handling money. (R. at 353 – 57). With respect to physical ailments, Plaintiff explained that she experienced occasional headaches, "but nothing too limiting." (R. at 353 – 57). Cognitive testing revealed difficulty with serial sevens, and counting, generally. (R. at 353 – 57). Dr. Marion diagnosed Plaintiff with major depressive disorder and cognitive disorder. (R. at 353 – 57). He assigned Plaintiff a global assessment of functioning[2] ("GAF") score of 45. (R. at 353 – 57). He further noted that Plaintiff would experience no more than slight to moderate limitations in all areas of functioning. (R. at 353 – 57).

State agency evaluator Sharon Becker Tarter, Ph.D. completed a Mental Residual Functional Capacity Assessment ("RFC") on April 15, 2009. (R. at 360 – 63). Based upon her review of Plaintiff's medical record, Dr. Tarter concluded that the evidence supported finding impairment in the way of organic mental disorder and affective disorder. (R. at 360 – 63). Dr. Tarter further concluded that, in spite of said impairments, Plaintiff would experience no more than moderate to not significant limitation in all areas of functioning. (R. at 360 – 63). As support for her findings, Dr. Tarter cited to Dr. Marion's earlier assessment, and accorded it great weight. (R. at 360 – 63). Dr. Tarter believed that Plaintiff would be capable of engaging in full-time work. (R. at 360 – 63).

---

[2]   The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 41 – 50 may have "[s]erious symptoms (e.g., suicidal ideation …)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

A Physical RFC dated May 12, 2009 was completed by state agency evaluator Frank Chiarelli. (R. at 50 – 56). Based upon his review of the case record, Mr. Chiarelli believed that the evidence supported the existence of severe impairment in the way of nephrotic syndrome, hypertension, headaches, and a history of cardiovascular accident. (R. at 50 – 56). Mr. Chiarelli concluded that the medical record demonstrated the existence of limitations stemming from said impairments, such that Plaintiff was limited to occasionally carrying fifty pounds, frequently carrying twenty five pounds, standing and walking six hours of an eight hour work day, and sitting six hours. (R. at 50 – 56). Plaintiff's field of vision was also limited. (R. at 50 – 56). Mr. Chiarelli felt that Plaintiff's medical record showed general success in treating her impairments, and that Plaintiff made inconsistent allegations with respect to her ability to engage in activities of daily living; she was considered to be only partially credible. (R. at 50 – 56).

Following a physical examination of Plaintiff, a Medical Statement Regarding Nonexertional Vision Impairment was completed by Jennifer Olburn, D.O. on June 18, 2010. (R. at 178 – 81). Dr. Olburn's findings indicated that although Plaintiff had 20/20 vision, she suffered an eighty percent loss of horizontal peripheral vision. (R. at 178 – 81). As a result, she had a decreased visual field. (R. at 178 – 81). Dr. Olburn had previously examined Plaintiff's eyesight in May 2009, and had recorded similar findings. (R. at 378 – 81). Dr. Olburn had recommended additional testing for further assessment of Plaintiff's visual limitations, but no testing was obtained. (R. at 378 – 81).

## IV. STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F. 2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas,* 540 U.S. 20, 24 – 25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler,* 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[3], 1383(c)(3)[4]; *Schaudeck v.*

---

[3]   Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[4]   Section 1383(c)(3) provides in pertinent part:

*Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F. 3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 91 (3d. Cir. 1986).

---

> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

8

## V.    DISCUSSION

The ALJ concluded that Plaintiff had medically determinable severe impairments in the way of hypertension, kidney disease, visual impairment, depression, and history of cardiovascular accident. (R. at 13). As a result, the ALJ determined that Plaintiff would be limited to medium work involving no more than simple, routine, repetitive tasks, no fast-paced production, relatively low stress, and no tasks requiring side vision or tasks that are not performed in front of her. (R. at 15). Based upon the testimony of the vocational expert, the ALJ concluded that even with such work restrictions Plaintiff was nonetheless capable of obtaining work existing in significant numbers in the national economy. (R. at 18 – 19). Plaintiff was not, therefore, entitled to DIB. (R. at 19).

Plaintiff objects to the ALJ's decision, arguing that he erred in failing to indicate which evidence supported his RFC assessment, in failing to obtain adequate information regarding Plaintiff's visual limitations, and in failing to properly consider Dr. Marion's GAF score of 45. (ECF No. 11 at 6 – 12). Defendant counters that the ALJ's decision should not be disturbed, because his findings were properly supported by substantial evidence from the record. (ECF No. 14 at 8 – 14). The court agrees with Defendant.

Plaintiff first asserts that the ALJ did not address her physical limitations on a "function-by-function basis," and "failed to obtain sufficient evidence to inform his residual functional capacity assessment." (ECF No. 11 at 9). However, the court observes that this claim is belied by Plaintiff's own statement to the effect that the ALJ's "denial included pages of medical evidence review." (ECF No. 11 at 7). That this review was not formatted to Plaintiff's liking is not pertinent.

An ALJ need not "use particular language or adhere to a particular formula in conducting his analysis;" his decision must ensure only that there is "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F. 3d 501, 505 (3d Cir. 2004). To this end, an ALJ must provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ must also include sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).

It is clear to this court – based upon a reading of the ALJ's RFC assessment and discussion of the record – exactly which evidence was considered and, moreover, which evidence was rejected. The ALJ first discusses Plaintiff's claims of pain and limitation, and her account of daily activities, followed by her testimony regarding her subjective impressions regarding the nature of her impairments. (R. at 14, 16 – 17). The ALJ then declines to accord full credit to these claims by comparing them to much less severe objective findings by treating sources throughout the medical record. While Plaintiff reported experiencing severe nausea, headaches, and stomach pain several times per week, requiring her to lie down for relief, the ALJ's careful review of the record revealed no such findings by her doctors to corroborate the claims. (R. at 16 – 18). Despite allegations of depression and inability to concentrate, the ALJ noted that Plaintiff had no psychiatric treatment history, she denied difficulty with concentration to her physicians at TAM, and she admitted to being able to read books and the newspaper, and

to watch television. (R. at 14, 16 – 18). Plaintiff fails to point to objective evidence in the medical record that contradicts the ALJ's RFC assessment.

Plaintiff next claims that based upon the ALJ's RFC, it is clear that he adopted the physical RFC findings of state agency evaluator Chiarelli, yet did not mention the assessment explicitly. Plaintiff would have this court remand the case, simply to add Mr. Chiarelli's name to his analysis. This the court will not do. It was obvious, even to Plaintiff, that Mr. Chiarelli's RFC was adopted. Remanding the case in order that the ALJ may add Mr. Chiarelli's name to his discussion is unnecessary, and would not change the outcome of the ALJ's decision.

Plaintiff also argues that the ALJ erred in failing to order additional testing suggested by Dr. Olburn to better evaluate visual impairment for disability purposes. Yet, there is no assertion that additional testing was necessary to making a disability determination. Indeed, in spite of Plaintiff's visual impairments as discussed by Dr. Olburn, the ALJ noted Plaintiff's continued ability to drive, read, and watch television. (R. at 14, 16 – 18). Plaintiff provides no basis for this court to find that she was more visually limited than found by the ALJ. Dr. Olburn made no statement to the effect that further testing was vital to confirming the validity of her findings, but only that "I think it would be helpful with regards to this patient's determination of disability." (R. at 378).

"[C]ircumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a conflict, inconsistency or ambiguity in the record." *Wheeler v. Astrue*, 2013 WL 1819774 at *7 (W.D. Pa. Apr. 29, 2013). The claimant must show that "the record as developed is not sufficient for the ALJ to make a determination." *Id.* (citing *Thompson v. Halter*, 45 Fed. App'x 146, 149 (3d Cir. 2002)). Plaintiff has not made such a showing, and based upon a review

11

of the ALJ's decision and the medical record, the court finds no reason to believe that there was insufficient evidence for the ALJ to proceed without ordering additional vision testing.

With respect to Plaintiff's final argument that the ALJ improperly rejected Dr. Marion's GAF score of 45, the court finds that the ALJ properly supported this rejection with substantial evidence from the record. Significantly, the ALJ found the GAF score to be inconsistent with Dr. Marion's narrative statement and limitations findings – none of which were more than moderate. (R. at 18). Dr. Marion provided no explanation to justify the GAF score of 45, which typically implies more serious functional limitations. The United States Court of Appeals for the Third Circuit has made it clear that when "medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." *Cotter*, 642 F. 2d at 705. Here, the ALJ clearly explained that he accorded the GAF score lessened weight due to inconsistency with Dr. Marion's narrative report and limitations findings. No objective evidence has been advanced by Plaintiff to contradict the ALJ's assessment.

## VI.  CONCLUSION

Based upon the foregoing, the court finds that substantial evidence supported the determination by the ALJ. Accordingly, Plaintiff's Motion for Summary Judgment is denied; Defendant's Motion for Summary Judgment is granted; and, the decision of the ALJ is affirmed. Appropriate orders follow.

*s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc/ecf: Kelie C. Schneider, Esq.
420 Pearl Street
Pittsburgh, PA 15224
(412) 370-3573

Cynthia C. Berger, Esq.
5850 Ellsworth Avenue
Suite 200
Pittsburgh, PA 15232
(412) 661-1400

Christy Wiegand, Esq.
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
(412) 644-3500